**F I L E D**
CLERK, U.S. DISTRICT COURT

12/7/2023

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ TV _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2023 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>CHRISTOPHER FAGON,<br>  aka "Broker,"<br>  aka "Christopher Broker,"<br>  aka "Chris Fasen,"<br>  aka "Chris B," and<br>JAMES WESLEY JACKSON III,<br>  aka "Imperial,"<br><br>          Defendants. | CR No. 2:23-cr-00600-MWF<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1956(h): Conspiracy to Commit Money Laundering; 18 U.S.C. § 1349: Conspiracy to Commit Bank Fraud] |

     The Grand Jury charges:

                              COUNT ONE

                        [18 U.S.C. § 1956(h)]

                          [ALL DEFENDANTS]

A.   INTRODUCTORY ALLEGATIONS

     At times relevant to this Indictment:

     1.   Defendant CHRISTOPHER FAGON, also known as ("aka")

"Broker," aka "Christopher Broker," aka "Chris Fasen," aka "Chris B,"

was a resident of Los Angeles, California.

2.    Defendant JAMES WESLEY JACKSON III, also known as "Imperial," was a resident of Los Angeles, California.

3.    Co-conspirator CC-1 resided in Canada.

4.    Defendant JACKSON exercised control over Imperial Luxury Rentals LLC ("Imperial LLC"), a Florida corporation for which defendant JACKSON's mother was the registered agent.

5.    Wells Fargo Bank, N.A. ("Wells Fargo"), Bank of America, N.A. ("BOFA"), and JPMorgan Chase Bank, N.A. ("Chase") were each a federally-insured financial institution.

6.    Defendant JACKSON had signature authority and exercised control over an account at Wells Fargo in Imperial LLC 's name ending in -4066 (the "Imperial LLC Account").

7.    A "grandparent scam" or "relative-in-distress scam" was a fraudulent scheme using interstate and international wire communications, including telephone calls.  Scammers would contact victims throughout the United States pretending to be relatives of the victims, such as a grandchild, and pretending to be persons in contact with the victims' relatives, such as a lawyer or law enforcement officer.  The scammers would falsely claim that the victims' relatives were in legal jeopardy or otherwise in distress, and that the victims' relatives needed the victims to assist by sending them money.  The scammers would instruct the victims, most of whom were older adults, to send the purportedly necessary money to bank accounts, business entities, and physical addresses specified by the scammers, using interstate wires and cashier's checks sent by private commercial carrier, for the supposed purpose of assisting the relatives in distress.  In fact, the victims' relatives were not in distress and did not need and had not requested the money.

8.   C.H. of Pennsylvania, V.G. of Florida, F.P.N. of Wisconsin, A.B. of Texas, J.Z. of Fresno, California, and R.S. of Anaheim, California, were victims of grandparent scams.

9.   A "Money Mule" was a person who agreed, at the request of an associate, to (a) use one or more bank accounts nominally or actually controlled by the Money Mule ("Money Mule Accounts") to receive and transfer money as directed by the associate, and/or (b) receive cashier's checks at addresses to which the Money Mule had access and transfer and negotiate the cashier's checks as directed by the associate.

10.   Money Mule Account-1 was a business entity account at Chase established by Money Mule-1, an associate of defendant FAGON.

11.   Money Mule Account-2 was a business entity account at Wells Fargo Bank under the signature authority of Money Mule-2, an associate of defendant FAGON.

12.   Money Mule Account-3 was a business entity account at Chase controlled by Money Mule-3, an associate of defendant JACKSON.

13.   Money Mule-4 was a resident of West Hollywood, California, and an associate of defendant JACKSON.

B.   THE OBJECTS OF THE CONSPIRACY

14.   Beginning on a date unknown, but no later than in or about June 2019, and continuing through at least on or about January 19, 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendants FAGON and JACKSON knowingly conspired with one another, and others known and unknown to the Grand Jury, to commit the following offenses against the United States:

a.   Knowing that the property involved in financial transactions affecting interstate and foreign commerce represented

3

the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, namely, wire fraud, in violation of Title 18, United States Code, Section 1343, conducting and attempting to conduct such financial transactions, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

      b.   knowingly engaging and attempting to engage in monetary transactions involving criminally derived property of a value greater than $10,000, which property represented the proceeds of specified unlawful activity, namely, wire fraud, in violation of Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Section 1957(a).

C.   THE MANNER AND MEANS OF THE CONSPIRACY

    15.   The objects of the conspiracy were to be carried out, and were carried out, in substance, as follows:

      a.   Defendant FAGON would recruit his friends and associates, including defendant JACKSON, to be Money Mules. Defendant JACKSON would also recruit friends and associates to be Money Mules.

      b.   Defendants FAGON and JACKSON would direct the Money Mules to use new and pre-existing business entities and bank accounts to receive and transmit money.  Defendants FAGON and JACKSON would obtain from the Money Mules their business entity names and Money Mule Account identifiers.

1          c.    In addition, defendant FAGON, others acting at his

2     direction, and other known and unknown co-conspirators, would:

3     (a) obtain the personal identifying information of unwitting third

4     parties ("ID theft victims"); (b) create new business entities using

5     the names of the ID theft victims, and associate with those business

6     entities physical addresses to which defendant FAGON and others

7     associated with him had access; and (c) open bank accounts ("ID Theft

8     Accounts") in the names of those business entities and under the

9     false and forged signature authority of the ID theft victims.

10    Thereafter, defendant FAGON, and others acting together with him and

11    at his direction, including defendant JACKSON, would exercise control

12    over the ID Theft Accounts.

13         d.    Defendants FAGON and JACKSON, and Money Mules

14    associated with them and acting at their direction, would receive

15    funds, including funds sent by victims of grandparent scams, via wire

16    transfers and the deposit of cashier's and other checks payable to

17    business entities, into Money Mule Accounts and ID Theft Accounts.

18         e.    Defendant FAGON and JACKSON would conduct, engage in,

19    and cause to be executed from the Money Mule Accounts and ID Theft

20    Accounts, financial and monetary transactions with and involving wire

21    fraud proceeds, including the grandparent scam proceeds, including

22    monetary transactions involving more than $10,000 of such proceeds,

23    transactions between and among business entities they controlled, and

24    transactions for their own personal benefit.

25         f.    Through the use of the business entities, Money Mules,

26    Money Mule Accounts, ID Theft Accounts, and false statements,

27    defendants FAGON and JACKSON and their co-conspirators would execute

28    such financial transactions, and cause such financial transactions to

1  be executed, knowing and intending that such transactions would

2  conceal and disguise the nature, location, ownership, and control of

3  the wire fraud proceeds, including the grandparent scam proceeds.

4      16.  Defendants FAGON and JACKSON, and other known and unknown

5  co-conspirators, caused more than $2 million in grandparent scam

6  proceeds to be laundered through Money Mule Accounts and ID Theft

7  Accounts.

8  D.  <u>OVERT ACTS</u>

9      17.  In furtherance of the conspiracy, and to accomplish its

10  objects, defendants FAGON and JACKSON, on or about the following

11  dates, committed and willfully caused others to commit the following

12  overt acts, among others, within the Central District of California

13  and elsewhere:

14      <u>Overt Act No. 1:</u>  On August 22, 2019, in response to an

15  inquiry from a bank representative regarding $150,000 wired by scam

16  victim C.H. to an account controlled by defendant FAGON, defendant

17  FAGON falsely advised the investigator that the reason for the

18  transfer was that defendant FAGON had done a business transaction for

19  scam victim C.H.'s vendor regarding an e-commerce project defendant

20  FAGON had done in July.

21      <u>Overt Act No. 2:</u>  On April 9, 2020, defendant FAGON caused

22  $40,000 traceable to funds sent by scam victim V.G. as a result of a

23  grandparent scam to be transferred electronically from Money Mule

24  Account-1 to another business account controlled by Money Mule-1.

25      <u>Overt Act No. 3:</u>  Responding to an inquiry from a bank

26  representative regarding activity in Money Mule Account-2, on April

27  29, 2020, defendant FAGON identified himself to the bank

28

representative using a false last name in order to conceal his true identity.

Overt Act No. 4:   On July 7, 2020, after defendant FAGON and defendant JACKSON discussed whether defendant JACKSON had any bank accounts available to receive money, defendant JACKSON said "I'm not opening additional accounts until I see one pass through. In the off chance something happens I'll need to open legit accounts at a different bank and if all got closed for whatever reason it's [too] much exposure."

Overt Act No. 5:   On July 13, 2020, defendant FAGON caused Cambridge Real Estate LLC ("Cambridge") to be falsely registered as a California Limited Liability Company ("LLC") controlled by ID Theft Victim M.L.

Overt Act No. 6:   On July 13, 2020, defendant FAGON advised CC-1 that Cambridge and Spartans Investments LLC ("Spartans") were business entities available to be used to receive money.

Overt Act No. 7:   On July 13, 2020, defendant FAGON advised CC-1 that banks were investigating money traceable to scam victims and others that had been deposited to accounts that defendant FAGON and his Money Mules controlled, and that "it's all being deemed fraud."

Overt Act No. 8:   On July 14, 2020, defendant FAGON caused Spartans to be falsely registered as a California LLC controlled by ID theft victim T.S., with a mailing address on St. Paul Avenue in Los Angeles, California (the "St. Paul address").

Overt Act No. 9:   On July 14, 2020, defendant FAGON caused a cashier's check for $75,000, payable to Imperial LLC, to be sent by scam victim F.P.N. to the St. Paul address.

<u>Overt Act No. 10:</u>   On July 15, 2020, defendant FAGON advised CC-1 that defendant JACKSON was getting an Employer Identification Number, and there would be three new LLCs.

<u>Overt Act No. 11:</u>   On July 15, 2020, defendant FAGON told defendant JACKSON, "I got the check / $75k," and thereafter arranged to meet defendant JACKSON.

<u>Overt Act No. 12:</u>   On July 16, 2020, defendants FAGON and JACKSON caused scam victim F.P.N.'s $75,000 cashier's check to be deposited in Los Angeles, California, into the Imperial LLC account.

<u>Overt Act No. 13:</u>   On July 16, 2020, in response to defendant FAGON's request to "send picture of deposit pls," defendant JACKSON sent a photograph of a deposit slip showing the deposit of scam victim F.P.N.'s $75,000 check into the Imperial Account.

<u>Overt Act No. 14:</u>   On July 16, 2020, referring to the $75,000 check deposit, defendant JACKSON told defendant FAGON, "First and last one through my account. Everything else through dummies[.]"

<u>Overt Act No. 15:</u>   On July 17, 2020, defendant FAGON caused a cashier's check for $45,000, payable to Imperial LLC, to be sent by scam victim A.B. to the St. Paul address.

<u>Overt Act No. 16:</u>   On July 17, 2020, before leaving the United States for Canada, defendant FAGON told defendant JACKSON that defendant FAGON had left a "burner phone" by defendant JACKSON's golf clubs, and asked defendant JACKSON to take the phone in case any banks called wishing to speak to a signatory on Money Mule Accounts associated with defendant FAGON.

<u>Overt Act No. 17:</u>   On July 22, 2020, defendants FAGON and JACKSON caused scam victim A.B.'s $45,000 cashier's check to be deposited in Los Angeles, California, into the Imperial LLC account.

8

Overt Act No. 18:   On July 24, 2020, defendants FAGON and JACKSON caused approximately $24,835.29, more than $10,000 of which was traceable to the funds from scam victims A.B. and F.P.N., to be wired from the Imperial LLC account to an account in Canada.

Overt Act No. 19:   On August 3, 2020, defendant FAGON caused to be opened at BOFA an account ending 2985 in the name of Cambridge, under the false signature authority of ID theft victim M.L.

Overt Act No. 20:   On August 11, 2020, defendant FAGON caused to be opened at BOFA an account ending 2753 in the name of Spartans, under the false signature authority of ID theft victim T.S.

Overt Act No. 21:   On August 13, 2020, defendant FAGON caused approximately $102,987 to be wired by scam victim J.Z. to the BOFA Spartans account ending 2753.

Overt Act No. 22:   On September 5, 2020, defendant FAGON caused a phone call to be made to a BOFA representative by someone impersonating ID theft victim T.S., reporting that "T.S." had not received a check representing the balance remaining to the credit of the BOFA Spartans account ending 2753, and requesting the tracking number for the bank's shipment of such check.

Overt Act No. 23:   On October 1, 2020, defendant FAGON caused approximately $80,000 to be wired by scam victim R.S. to the Cambridge account ending 2985.

Overt Act No. 24:   On October 7, 2020, defendants FAGON and JACKSON caused approximately $53,016.46, some of which was traceable to scam victim R.S.'s funds, to be wired from the Cambridge 2985 account to Money Mule Account-3 at Chase.

<u>Overt Act No. 25:</u>   On October 8, 2020, defendant FAGON caused approximately $75,000 to be wired by scam victim R.S. to the Cambridge 2985 account.

<u>Overt Act No. 26:</u>   On October 9, 2020, defendant JACKSON caused approximately $50,000 to be wired from Money Mule Account-3 to another business account, for the benefit of defendant JACKSON.

<u>Overt Act No. 27:</u>   On November 19, 2020, defendant JACKSON caused Money Mule-4 to call BOFA, impersonate ID theft victim T.S., and request that BOFA send to Money Mule-4's West Hollywood address a check for the approximately $80,000 balance remaining to the credit of the BOFA Spartans account ending 2753.

<u>Overt Act No. 28:</u>   On December 2, 2020, defendant JACKSON caused Money Mule-4 to contact BOFA, impersonate ID theft victim T.S., and request the status of BOFA's distribution of the approximately $80,000 balance remaining to the credit of the BOFA Spartans account ending 2753.

<u>Overt Act No. 29:</u>   On December 10, 2020, defendant JACKSON caused BOFA to issue check number 38395000 for approximately $82,807.27 payable to Spartans, more than $10,000 of which was traceable to scam victim J.Z.'s funds.

<u>Overt Act No. 30:</u>   On December 18, 2020, defendant JACKSON caused "Spartans Investments LLC" to be established in Florida as a Limited Liability Company ("Florida Spartans"), and himself to be listed as the authorized manager.

<u>Overt Act No. 31:</u>   On January 6, 2021, defendant JACKSON caused check number 38395000, traceable to scam victim J.Z.'s funds, to be deposited at JPMorgan Chase Bank, as a split deposit to accounts

defendant JACKSON controlled ending -8387 and -5905 in the name of
Florida Spartans.

COUNT TWO

[18 U.S.C. § 1349]

[ALL DEFENDANTS]

18.  The Grand Jury realleges paragraphs 1 through 13 and 15 through 17 of this Indictment here.

A.  THE OBJECT OF THE CONSPIRACY

19.  Beginning on a date unknown, but no later than on or about September 4, 2020, and continuing through at least approximately January 19, 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendants FAGON and JACKSON conspired with one another, Money Mule-4, and others known and unknown to the Grand Jury, to commit bank fraud, in violation of Title 18, United States Code, Section 1344(2).

B.  THE MANNER AND MEANS OF THE CONSPIRACY

20.  The object of the conspiracy was to be carried out, and was carried out, in substance, as follows:

a.  Defendants FAGON and JACKSON would contact, and cause Money Mule-4 and others to contact, BOFA for the purpose of persuading BOFA to release all funds BOFA held remaining to the credit of the BOFA Spartans account ending 2753.

b.  When contacting BOFA for this purpose, defendants FAGON and JACKSON, and co-conspirator Money Mule-4, acting with intent to defraud, would falsely claim to be the nominal account holder, ID theft victim T.S., and would cause others to make the same false claim.

c.  Defendant JACKSON, and co-conspirator Money Mule-4 acting at his direction, would request that BOFA send a check for approximately $82,000, representing the funds remaining to the credit

12

of the BOFA Spartans account ending 2753, to Money Mule-4's address in West Hollywood, California.

        d.   Co-conspirator Money Mule-4 would agree to provide the check from BOFA to defendant JACKSON.

        e.   Defendant JACKSON would deposit the check into one or more accounts he controlled.

C.    OVERT ACTS

    21.  In furtherance of the conspiracy, and to accomplish its object, defendants FAGON and JACKSON, and other co-conspirators, including Money Mule-4, on or about the following dates, committed and willfully caused others to commit the following overt acts, among others, within the Central District of California and elsewhere:

    Overt Act No. 1:   On September 5, 2020, defendant FAGON caused a phone call to be made to a BOFA representative by someone impersonating ID theft victim T.S., reporting that "T.S." had not received a check representing the balance remaining to the credit of the BOFA Spartans account ending 2753, and requesting the tracking number for the bank's shipment of such check.

    Overt Act No. 2:   On November 19, 2020, defendant JACKSON caused co-conspirator Money Mule-4 to call BOFA, knowingly impersonate ID theft victim T.S., and request that BOFA send to co-conspirator Money Mule-4's West Hollywood address a check for the approximately $80,000 balance remaining to the credit of the BOFA Spartans account ending 2753.

    Overt Act No. 3:   On December 2, 2020, defendant JACKSON caused co-conspirator Money Mule-4 to contact BOFA, impersonate ID theft victim T.S., and request the status of BOFA's distribution of

the approximately $80,000 balance remaining to the credit of the BOFA Spartans account ending 2753.

Overt Act No. 4:   On December 10, 2020, defendant JACKSON caused BOFA to issue check number 38395000 for approximately $82,807.27 payable to Spartans.

Overt Act No. 5:   On December 18, 2020, co-conspirator Money Mule-4 told defendant JACKSON, "We got the check / Can I get lobster?? Lol."

A TRUE BILL


___/S/_____
Foreperson

E. MARTIN ESTRADA
United States Attorney


MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

KRISTEN A. WILLIAMS
Assistant United States Attorney
Deputy Chief, Major Frauds
Section

MONICA E. TAIT
Assistant United States Attorney
Major Frauds Section

14